**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**LESLIE STANLEY,**

　　　**Petitioner,**

**v.**

**JULIUS FLAGG,**

　　　**Respondent.**　　　　　　　　　　　**Case No. 00-CV-895 DRH**


## MEMORANDUM & ORDER

**HERNDON, District Judge:**


## I.  INTRODUCTION

　　　This Order deals with two motions filed shortly after the Court granted Petitioner Leslie Stanley's § 2254 Habeas Petition on March 28, 2006 (*see* Doc. 88), finding that Petitioner was denied his right to effective assistance of trial counsel in violation of the Sixth Amendment.  Petitioner was ordered to be released from incarceration within 120 days from the date of the Order unless the State of Illinois should decide to retry him (*Id*. at 38).  Respondent has pursued an appeal of the Court's decision, thereby prompting his filing of a Motion For Stay of Judgment Pending Appeal (Doc. 91) to which Petitioner has filed his opposing Response (Doc. 98).

　　　In addition, Petitioner has filed a Motion for Release on Bond Pending Appeal and supporting memorandum (Docs. 96 & 97).  Respondent subsequently

filed a combined Reply to Petitioner's Response to the Motion to Stay and Response to Petitioner's Motion for Release on Bond (Doc. 100).  Lastly, Petitioner has filed a Reply to Respondent's Response to the Motion for Release on Bond (Doc. 101). Because the merits of the two motions at hand are so similar, the Court will conjoin them into one analysis.

## II.  ANALYSIS

### A.    LEGAL STANDARD

#### 1.    Staying an Appeal

When determining whether to stay an order or judgment pending appeal, there are several factors the Court must consider: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, **481 U.S. 770, 776 (1987)(internal citations omitted)**.  Additional considerations for the Court are whether the habeas petitioner is a flight risk and/or a danger to the public, and the state's interest in continuing custody and rehabilitation pending a final determination of the case on appeal. *Id.* **at 777**.

### 2.     Release Pending Appeal

Petitioner makes his Motion for Release on Bond Pending Appeal pursuant to **FEDERAL RULE OF APPELLATE PROCEDURE 23(c)** (Doc. 96),which states, in pertinent part:

> **While a decision ordering the release of a prisoner is under review, the prisoner must – unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise--be released on personal recognizance, with or without surety.**

## C.     STAYING PETITIONER'S RELEASE PENDING RESPONDENT'S APPEAL

Petitioner opposes a stay of judgment (Doc. 98), arguing Respondent has failed to demonstrate that the relevant factors weigh in favor of granting a stay.  The Court will analyze whether the factors weigh in favor of granting a stay.  If the Court determines these factors do not weigh in favor of a stay, then Petitioner shall be released on bond pending appeal, pursuant to **Rule 23(c)**.

### 1.     Likelihood of Success on the Merits

The first factor is whether Respondent has shown a likelihood of success on the merits of his appeal of the Court's Order.  In support of this factor, Respondent argues his appeal indeed makes "a strong case on the merits" (Doc. 91, ¶ 4).  First, Respondent argues he will show that the Court was incorrect in finding the state courts did not properly apply the ***Strickland*** standard to analyze Petitioner's habeas claims in order to allow review pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), **28 U.S.C. § 2254** (*Id*.).  Secondly,

Respondent believes the Court failed "to give any deference to the findings of fact made by the state courts on issues of credibility . . . and on other issues not re-evaluated by [the] Court at the evidentiary hearing" regarding Petitioner's claim of ineffective assistance of counsel for failure to call Dwana Stanley, Robert Brock and Bryan Swygert (*Id*. at ¶ 5). Therefore, Respondent asserts that given the possibility that "reasonable minds can differ on the of [*sic*] evidence . . . there is a substantial likelihood that [R]espondent will obtain a reversal on appeal . . . " (*Id*.).

Further, Respondent argues that the Court should *not* have taken into consideration Petitioner's procedurally defaulted claims that trial counsel failed to investigate, interview, or call as witnesses James Dean, Tamara Evans, Lacy Green or Michael Stanley (*Id*. at ¶ 6). Namely, Respondent asserts that because Petitioner failed to present new evidence to support his "miscarriage of justice exception" theory, the Court's review of Petitioner's procedurally defaulted claims was erroneous (*Id*. at ¶¶ 6-9).

Opposing Respondent's arguments, Petitioner asserts that the Court "based its decision on Petitioner's [trial] counsel's complete failure to investigate this case, as well as, on his counsel's testimony which demonstrated a complete lack of a defense strategy" (Doc. 98, ¶ 5), and not merely counsel's failure to call certain witnesses at trial (Doc. 97, p. 4). Additionally, Petitioner points out that the Court also based its finding on the fact that his trial counsel could not recall any specific actions he took at trial or other aspects regarding his trial preparation in order to concoct existence of a "reasonable trial strategy" (Doc. 97, p. 4). Further, Petitioner

argues that the Court clearly met the fundamental miscarriage of justice standard "by demonstrating Petitioner's actual innocence by holding that based on the new evidence presented, no reasonable juror would have found Petitioner guilty of the crime but for the error(s) he attributes to the state court" (Doc. 98, ¶ 6).  Respondent offers that in accordance with *Schlup v. Delo*, **513 U.S. 298, 330 (1995)**, the Court was allowed to make some credibility assessments based on the new evidence raised before it during the evidentiary hearing (Doc. 97, p. 5).

### 2.    Irreparable Injury Absent a Stay

Respondent feels that absent a stay, he will suffer irreparable injury if required to retry Petitioner – as a successful appeal could negate the need to conduct a re-trial altogether (Doc. 91, ¶ 10).[1]  In his opposing Response, Petitioner asserts that the time and expense required for the Government to re-try him is far outweighed by the constitutional injury he will suffer if he remains incarcerated, as he was found by the Court to be convicted in violation of his Sixth Amendment rights (*Id*. at ¶ 8).  Petitioner instead asserts that while Respondent's argument in this regard may be appropriate when requesting a stay, it does not support opposing Petitioner's **Rule 23(c)** Motion, according to the holding in *Hampton v. Leibach*, **2001 WL 1618737 at \*2 (N.D. Ill. 2001)("If the mere fact of having been convicted in the case to which a habeas corpus petition is directed was enough**

---

[1]  The Court notes that Respondent himself will not actually be responsible to conduct a re-trial – as current Warden of the correctional facility where Petitioner is incarcerated, he is procedurally required to be named as "Respondent" in this suit.  However, conducting a re-trial will fall within the responsibility of the State of Illinois as the prosecuting authority.

**to overcome Rule 23(c)'s presumption of release, the presumption would be meaningless.")** (Doc. 97, p. 7).

### 3.    Harm to Other Interested Parties Due to Stay

If a stay is granted, Respondent does not believe Petitioner will be substantially harmed if required to remain incarcerated pending the outcome of the appeal (Doc. 91, ¶ 11).   The argument is that if the Government is forced to immediately re-try him, Petitioner will "undoubtedly be held at the St. Clair County Jail during those proceedings" (*Id*.).   Similarly, if the stay is granted, Petitioner will remain with the Department of Corrections – incarcerated.   Respondent opines that either way Petitioner will remain incarcerated – it is merely a matter of where (*Id*.). Thus, Respondent does not believe Petitioner will suffer further injury if a stay of his release is granted, as he will inevitably be back in incarceration as soon as a re-trial is commenced.

Petitioner asserts that Respondent's argument here is "nonsensical" in suggesting that Petitioner would be incarcerated regardless of the Court's decision (Doc. 97, p. 6).   Petitioner notes that the Court's Order clearly provided that Petitioner was to be released from custody unless the State decides to retry him within 120 days from the date of the Order.   Further, Petitioner argues that **Rule 23(c)** creates a strong presumption of release – one that Respondent can only overcome by offering factors weighing against release, not merely arguing Petitioner could theoretically be incarcerated by the State immediately following his release on

bond.

**4.     Public Interest**

Respondent does not expound on this factor, but merely states "the public's interest, will only be served by a stay" (Doc. 91, ¶ 11).  Petitioner argues that the public has a significant interest to ensure that individuals are not imprisoned in violation of the Constitution, as expressed in ***Hampton*, 2001 WL 1618737 at \*2** (Doc. 97, p. 7).  Respondent does not rely upon anything other than the conviction to show it would be against the public interest to release Petitioner from incarceration pending appeal (*Id.*).

**5.     Additional Factors**

Because Petitioner was convicted of first-degree murder "in a case that involved an eyewitness and a confession to a close family member," Respondent believes him to be a risk to the public safety and therefore a stay should be granted (Doc. 91, p. ¶ 10).  Petitioner argues that he does not pose a flight risk if released (Doc. 97, pp. 7-8).  His wife continues to reside in St. Clair County, Illinois, with Stanley's children and grandchildren (*Id.*).   Moreover, Petitioner's wife has apparently informed Petitioner's counsel that Petitioner may reside with her, which Petitioner proposes he would like to do, upon such terms and conditions as the Court may determine (Doc. 96, p. 2).

Petitioner's final argument is that the state's interest in continuing custody and rehabilitation pending determination of the appeal is outweighed in

favor of his release, as he has already served over twelve years of his thirty-five year sentence, and assuming time for good behavior, he should have only approximately five years remaining, meaning he has already served over two-thirds of his sentence (Doc. 97, pp. 8-9).  As such, Petitioner feels that any rehabilitative efforts by the State would have had opportunity to come to fruition by now (*Id.*).

Respondent makes the additional argument that Petitioner poses a great risk to the community based upon his criminal history (Doc. 100, ¶¶ 8-10). Substantiating this argument, Respondent points out the fact that Petitioner has three prior felony convictions in St. Clair County, Illinois (*Id.* at ¶ 8).  Attached as an exhibit is Petitioner's Inmate Report, including his prior sentencing information (Doc. 100, Ex. A).  It indicates Petitioner, on December 1, 1975, was convicted of both burglary and attempted armed robbery, and sentenced to a term of six years, and on December 22, 1977, Petitioner was again convicted of armed robbery, receiving a sentence of twelve years (*Id.*).

Respondent also argues that during the past six months, there has been three occasions where Petitioner has been placed in segregation while incarcerated (*Id.* at ¶ 9, Exs. B - D).  Examining the attached Final Summary Reports issued by the State of Illinois Department of Corrections Adjustment Committee, it appears that Petitioner was first placed in segregation for a month for having a physical altercation with another inmate.  Petitioner admitted to this act (*Id.*, Ex. B). Approximately one month later, Petitioner was again given 14 days segregation for refusing to be moved back to the same wing as the inmate he had a fight with

previously – he also plead guilty to his actions (*Id.*, Ex. C).  The last Report shows that Petitioner was given 29 days in segregation for directly disobeying a corrections officer by refusing to "step off the wing and get in line" and for his insolent behavior (*Id.*, Ex. D).

Petitioner contends that he does not present a threat to public safety, stating that two of his three prior convictions occurred over thirty years ago, with the third occurring over twenty-eight years ago (Doc. 101, ¶ 4).  Additionally, Petitioner offers that he "was released from prison in 1983 and was not convicted of any further crimes for over ten years until his conviction in 1993 that has ultimately been held unconstitutional by this Court" (*Id.*).  Regarding the three segregation incidents, Petitioner explains that the first was "nothing more than a mere scuffle between roommates" to which he admitted his guilt and the second was because he refused to go back to the same wing as his roommate in order to "avoid another potential violent confrontation" (*Id.* at ¶ 5).  As for his third incident, Petitioner states that he refused to step off the line "because he was seeking medical attention at the time for a tooth ache" (*Id.*).  Petitioner notes that he has not been cited for any other administrative violations "for more than seven years leading up to" the first segregation incident (*Id.* at ¶ 6).  Therefore, Petitioner disagrees that his prior convictions from approximately thirty years ago and the three segregation incidents evidence that he poses a threat to public safety.

    6.    **Weighing the Factors**

        In their briefings, both parties cite to an unreported case from the Northern District of Illinois, ***Hampton v. Leibach*, No. 99C5473, 2001 WL 1618737 (N.D. Ill., Dec. 18. 2001)**, a case that the Court finds insightful. ***Hampton*** is similar to the instant matter – the district court granted the writ of habeas corpus which was appealed by the respondent, prompting the petitioner to file a request for release pursuant to **Rule 23(c)**.  ***Id.* at \*1**.  Much like the analysis laid out in this Order, the district court applied the factors weighing against **Rule 23(c)**'s presumption of release from custody.  ***Id.***

        The ***Hampton*** court found that the respondent's arguments of likelihood of success upon the merits of its appeals did no more than offer conclusory statements, misinterpreting the basis of the district court's ruling.  ***Id.*** Further, the ***Hampton*** court found that the petitioner's risk of irreparable harm from continued detention outweighed any potential threat to public safety if petitioner was released, as the respondent did not make a sufficient showing that the petitioner posed a *current* risk to the public.  ***Id.* at \*1-2**.  Additional factors included that the petitioner had been incarcerated long enough to derive any rehabilitative benefits that could be offered by the correctional facility.  Moreover, the petitioner's sister was willing to allow him to stay with her while the respondent's appeal was pending, offering her house as security for the petitioner's bond.  ***Id.* at \*3**.  Considering all the factors, the ***Hampton*** court found that the respondent did

not overcome the presumption favoring release.  **Id.**   However, because the respondent had appealed the grant of a writ of habeas corpus, the ***Hampton*** court felt it appropriate to allow the state of Illinois to "defer its decision whether to retry [the petitioner] until the conclusion of the appeal."  **Id.**

The instant matter is somewhat analogous to ***Hampton***.  The Court must determine whether Respondent has overcome **Rule 23(c)**'s presumption of release. While Respondent offers more than mere conclusory theories supporting the merits of his appeal, the Court does not agree with Respondent's arguments.  Finding otherwise would essentially be an admission that the Court did not agree with the merits of its own ruling in issuing the writ of habeas corpus in the first place.

Respondent argues that the state appellate court cited to a state case that in turn cited to ***Strickland***, and therefore it did not apply a more stringent or "contrary to" standard than what ***Strickland*** requires (Doc. 100, ¶ 1).  The Court maintains its finding to the contrary and leaves it to the Seventh Circuit for further review.  In the Order granting an evidentiary hearing on Petitioner's habeas corpus action, the Court found that the state courts, "in requiring [Petitioner] to show that the witnesses' testimony would have changed the result in his case . . . imposed a standard even more rigorous than that rejected in ***Strickland***"[2] (Doc. 54, p. 17, internal citations omitted).

---

[2]  The Court, in its previous Order, also noted that the United States "Supreme Court specifically rejected the notion that a defendant 'must show that counsel's deficient conduct more likely than not altered the outcome of his case' " (*Id.* at 17, quoting ***Strickland*, 466 U.S. at 694**).

The Illinois Appellate Court stated in its opinion that "[w]e find that defense counsel's performance did not fall below an objective standard of reasonableness, and in any event Stanley was not so prejudiced by any of the alleged mistakes *that the outcome of the trial would have been different*" (Doc. 54 at 7-8, citing Transcript of Petitioner's Sentencing, pp. 30-33)(emphasis added).  The Court found that by requiring a finding of a *definite* change in the outcome of Petitioner's trial, the Illinois Appellate Court applied a stricter standard than the "*reasonable probability*" standard required by **Strickland**.  Therefore, the Court believes it was justified in finding that under AEDPA it could review Petitioner's Amended Habeas Petition because the state courts, in denying Petitioner's post-trial and post-conviction motions, applied the **Strickland** standard for ineffective assistance of counsel in a way that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" (Doc. 88, p. 15, ¶ 23).

Respondent also contends the Court should not have reassessed the credibility of certain witnesses who did not re-testify at the evidentiary hearing, arguing that the Court should have deferred to the state courts' assessments of credibility.  Reviewing witness testimony was a means for the Court to illustrate exactly *why* it was unreasonable for Petitioner's trial counsel to fail to interview these witnesses or effectively cross-examine them.  It was not a new assessment of witness credibility as Respondent suggests.  Instead, the Court assessed whether Petitioner's trial counsel, given the circumstances and available facts, provided Petitioner with

effective assistance of counsel.  Discussion of witness testimony was integral to this analysis.  As in *Hampton*, the Court did not base its decision to grant a writ of habeas corpus by determining witnesses, such as Dwana Stanley, were more believable than the state courts determined.  Rather, the Court's decision was "based on counsel's complete failure to investigate the case and interview exculpatory witnesses . . . ." *Hampton*,

 **2001 WL 1618737 at \*1**.

Unlike *Hampton*, Petitioner *does* have a criminal history, as Respondent reminds the Court.  Petitioner's prior convictions certainly give the Court pause.  However, the Court observes that Petitioner had not been convicted of anything for more than ten years prior to the conviction that was the subject of his habeas petition, and while his prior convictions are to be taken seriously, the Court finds that they are not enough to tip the scales against the presumption of release. If these convictions were fairly recent, numerous or more violent in nature, the Court may very well find differently, but this is not the case.  Petitioner has served his time for his prior convictions and would no longer be incarcerated for them at present. Moreover, Petitioner's conviction that is the subject of his habeas petition - a conviction the Court found unconstitutional - is not enough to overcome **Rule 23(c)**'s presumptive burden.  *See, e.g., Hampton,* **2001 WL 1618737 at \*2**.  The subject matter of Petitioner's three segregation incidents cited by Respondent are also unable to overcome the presumption of release

**Rule 23(c)** creates a strong presumption in favor of release. Although it is in a Court's discretion when examining the various relevant factors to determine that the presumption is outweighed in favor of denying release pending appeal, the Court finds in this instance that the factors do not weigh strongly enough in favor of a stay. The Court does not find that Respondent has sufficiently shown a strong likelihood of success on the merits of his appeal. Petitioner's irreparable harm of continued incarceration for a conviction that was found to be unconstitutional outweighs the possible threat to society posed by Petitioner's almost 30-year old convictions and minor disciplinary citations.

In issuing the writ for habeas corpus, the Court stated that unless Respondent decided to retry Petitioner within 120 days from the date of the Order, Petitioner would be released. Acknowledging that Respondent currently has appealed this Order and the appeal is now pending before the Seventh Circuit, the Court finds it appropriate to permit Respondent to defer the decision to retry Petitioner until the conclusion of his appeal. Therefore, Respondent will not be faced with the time and expense of an unnecessary retrial if the appeal is granted.

## IV.  CONCLUSION

In sum, Respondent's Motion For Stay of Judgment Pending Appeal (Doc. 91) is **GRANTED IN PART AND DENIED IN PART**, only for the limited purpose of allowing Respondent to stay his decision to retry Petitioner until Respondent's appeal has concluded.   On the other hand, the Court **GRANTS** Petitioner's Motion for Release on Bond Pending Appeal (Doc. 96).  The Court orders Petitioner to be released from custody on bond in the amount of $50,000.00. Petitioner may post 10% of the bond amount ($5,000.00).

**IT IS SO ORDERED.**

Signed this 1st day of June, 2006.

/s/          David  RHerndon

**United States District Judge**